IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL K.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of the U.S. Social
Security Administration,

    Defendant.

No. 17 CV 6597

Magistrate Judge Jeffrey I. Cummings

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael K. ("Claimant") filed a motion for summary judgment seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner"), denying his claim for disability benefits. The Commissioner has filed a cross-motion asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). For the reasons set forth below, Claimant's motion for summary judgment (Dkt. 14) is denied and the Commissioner's motion for summary judgment (Dkt. 22) is granted.

## I. BACKGROUND

### A. Procedural History

This is the second appeal to the District Court arising out of Claimant's May 2011 application for Supplemental Security Income ("SSI"). (R. 70, 148-56.) In that application, Claimant alleged a disability beginning May 1, 2011, due to bipolar disorder, obsessive compulsive disorder, seizure disorder, anxiety, memory deficits, and a learning disability. (R.

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to plaintiff only by his first name and the first initial of his last name.

148-56.) His application was denied initially and on reconsideration. (R. 70-74, 78-81.) Claimant appeared with counsel for a hearing before the ALJ on March 6, 2013. (R. 38-67.) On April 26, 2013, the ALJ issued a written opinion denying Claimant's application. (R. 10-26.) The Appeals Council subsequently denied Claimant's request for review. (R. 1-4.) Claimant then filed a timely appeal to the District Court. *See Kakoczki v. Colvin,* Case No. 14 CV 9207. In December 2015, while his appeal was pending, Claimant filed a second application for SSI benefits. (R. 807, 977-86.)

On August 25, 2016, Magistrate Judge Michael Mason issued a Memorandum Opinion and Order, granting Claimant's motion for summary judgment and remanding this matter to the Social Security Administration for further proceedings. *Kakoczki v. Colvin,* No. 14 CV 9207, 2016 WL 4479556, at *1 (N.D. Ill. Aug. 25, 2016). Specifically, Judge Mason held that the ALJ failed to properly assess the opinion of Claimant's treating physician, Dr. Barrios, and failed to properly assess Claimant's credibility. Pursuant to Judge Mason's opinion, the Appeals Council issued a remand order directing the ALJ to consolidate Claimant's two applications, offer the claimant the opportunity for a hearing, and take any further action needed to complete the record and issue a new decision. (R. 807-08.)

On remand, Claimant submitted additional medical evidence, and the ALJ held another hearing on April 20, 2017. (R. 674-714.) On June 27, 2017, the ALJ issued a second opinion denying Claimant's consolidated applications for benefits. (R. 644-60.) This appeal followed, and the parties consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. 7.)

### B. Relevant Medical Evidence

The record reveals that Claimant's mother first sought treatment for Claimant in 1996 at the age of three when he exhibited violent and aggressive behavior. (R. 578.) He was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD"), a learning disorder, and oppositional defiant disorder. (R. 578-79.) He was treated with "multiple psychotropic medications" and Lamictal for a seizure disorder. (*Id*.) School records indicate that Claimant participated in special education classes from elementary school through high school. (R. 301-350, 410-71.)

The majority of Claimant's treatment during the relevant time period was at Dreyer Medical Clinic. Claimant was under the care of pediatric psychiatrist Dr. Carlos Barrios from 2008 to 2011 for medication management and psychotherapy. Dr. Barrios first diagnosed ADHD and impulse control disorder, and later assessed bipolar disorder. (R. 579.) As of January 18, 2010, Claimant's target symptoms included grandiose features such as commandeering attitude, hyper-verbal speech, reckless activities, and mood swings. (R. 534.) On that date, claimant was "doing better with control of target symptoms," though he was exhibiting some obsessive behaviors with computers and technology. (*Id*.) Dr. Barrios described Claimant's insight and judgment as "relatively stable but still having some mild target symptoms." (*Id*.) Claimant was continued on Abilify, Intuniv, and Lamictal. (R. 535.)

Throughout the course of his visits with Dr. Barrios, Claimant reported having altercations with his mother's boyfriend, which at times escalated to police involvement. (R. 540-44.) Notwithstanding these altercations, Claimant's symptoms continued to improve throughout 2010 and into 2011. (R. 547-48, 551-52, 558-59, 562-63.) On March 14, 2011, Dr. Barrios reported that Claimant was dealing reasonably well with his medication and had good control of his symptoms. (R. 564.) He further reported that Claimant was looking for a job and

planned to graduate high school and attend college. (*Id.*) Having recently turned eighteen, Claimant asked Dr. Barrios about decreasing his medication "to see how he would do." (*Id.*) Dr. Barrios agreed to decrease his Intuniv. (*Id.*) As explained in more detail below, on March 19, 2012, Dr. Barrios wrote a letter to the SSA in support of Claimant's application for benefits. (R. 626-27.)

In July 2011, Claimant transitioned care to adult psychiatrist Dr. John Zhang. (R. 578-581.) Claimant reported he was "feeling fine," and "functioning well," though his mother described him as irritable and easily frustrated. (R. 579.) Dr. Zhang continued to prescribe Abilify and Intuniv. (R. 581.) By that time, Claimant had stopped taking Lamictal following a normal 24-hour EEG. (*Id.*) Dr. Zhang recommended that it might be re-started as both an anticonvulsant and as a mood stabilizer. (*Id.*)

Claimant underwent court ordered anger management from late 2012 through 2013 following an incident with his step-father. (R. 1395-1413.) Despite continued tension with his step-father and mother, he often reported a stable mood and an interest in working. (*See e.g.* R. 1397, 1399, 1416, 1448.)

Claimant continued treatment with Dr. Zhang approximately every three months through early 2017. Dr. Zhang repeatedly stated that Claimant reported "feeling fine" and denied depressive symptoms or insomnia, though he admitted to an irregular sleep schedule. (*See e.g.* R. 1351, 1403, 1414-15, 1510.) Claimant continued taking Ability, Intuniv, and Trazodone, and reported getting "restful sleep." *Id.* According to Claimant, any insomnia was "by choice." (R. 1457.)

In February 2016, Claimant's mother requested an appointment for Claimant's lack of motivation in looking for a job and inability to sleep at night. (R. 1520.) Claimant continued to

4

deny insomnia and explained that he had "no urgency to find a job" because his girlfriend was supporting him financially. (*Id*.) Similar notes continued at the next few appointments.

On March 2, 2017, Claimant's mother called Dr. Zhang's office stating that she needed a letter for Claimant's disability case "indicating his diagnosis and explaining why [he] cannot work." (R. 1569.) "Per instructions of his attorney," the letter was to "include his symptomology: unable to get along with people, memory deficit, psychosis, Tremors/shaking." (*Id*.) The record includes a March 2, 2017 letter from Dr. Zhang to the SSA in support of Claimant's application for benefits. (R. 1309.) Dr. Zhang also submitted a letter in connection with Claimant's initial application back on September 10, 2012. (R. 639.) Both of these letters are discussed in more detail below.

Over the relevant time period, in addition to mental health treatment, Claimant underwent treatment for a knee injury, dizziness, and continued management of his seizure disorder.

**C. Claimant's Testimony**

At the April 20, 2017 hearing, Claimant, a 2011 high school graduate, testified that he had not had any additional education or vocational training since the previous hearing. (R. 676-77.) He continued to reside with his mother and step-father. (R. 677.) He explained that he has worked in part-time positions at Jewel as a bagger, at Petco as a stocker, and as a cashier at TigerDirect and Walmart. (R. 678-79.) He resigned from all of these positions because he became easily overwhelmed. (R. 678-81.)

Claimant takes medication for seizures and has not had a seizure in the last two years. (R. 683.) He testified that he suffers from low self-esteem and mood swings. (R. 684, 698.) Claimant has been trying to sleep more at night, but struggles to do so despite starting medication. (R. 684-85.) Claimant described memory loss and difficulty concentrating and

focusing on tasks. (R. 685.) He often forgets to take his medications or how to perform everyday tasks. (R. 688, 699.) While working at Walmart, Claimant had anxiety attacks when customers asked him too many questions. (R. 687-88.) Claimant's anxiety and medications also cause him to shake and sometimes fall in the shower. (R. 688-89.)

Claimant can do the dishes, laundry, vacuum, dust, mop, and sweep, with some shakiness and often with reminders. (R. 690, 699.) He struggles taking out the trash due to back pain. (*Id.*) He no longer mows the lawn and can only shovel snow for ten minutes at a time. (R. 691.) He no longer swims or exercises due to pain. (R. 694.) Claimant does not like to drive without his mom in the vehicle, and only drives short distances without her. (R. 692.) He enjoys socializing with his friends and playing video games. (R. 692, 695.)

### D. Claimant's Mother's Testimony

Claimant's mother also offered testimony at the hearing. She described a long history of learning disabilities and problems associated with seizures. (R. 703.) She explained that Claimant has no concept of time, has difficulty focusing and completing everyday tasks, and has been unable to maintain a job. (*Id.*) She also described the altercation between Claimant and her husband and the anger management that followed. (R. 704-06.)

### E. Vocational Expert's Testimony

Vocational Expert ("VE") Thomas A. Gusloff also appeared at the hearing on April 20, 2017. The ALJ first classified claimant's past work at Jewel as a bagger (medium and unskilled), and at PETCO as a store laborer (medium and unskilled). (R. 708-09.) Claimant's work at Walmart could be classified as a cashier checker, which is light and semi-skilled under the Dictionary of Occupational Titles, but heavy as performed. (R. 709.)

Next, the ALJ asked the VE to consider someone of Claimant's age, education, and work history with the following limitations: he should never climb ladders, ropes, or scaffolding; should avoid all exposure to work hazards such as unprotected heights, moving machinery, and motor vehicles; is limited to simple, routine tasks, with no strict quotas, money handling or reading and writing; and should have no contact with the public, but can have occasional contact with coworkers and supervisors. (R. 709-710.) The VE testified that such an individual would be capable of performing work as a laundry laborer, dryer attendant (both medium and unskilled), or bagger (light and unskilled). (R. 710.) The VE also explained that employers expect employees to be on task 85% of the day or more and tolerate two absent days in a thirty-day period. (*Id.*) In response to questioning from Claimant's representative, the VE confirmed that the need for continuous reminders, redirection, or training would preclude competitive employment. (R. 712.)

## II. ANALYSIS

### A. Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, --- S.Ct. ---, 2019 WL 1428885, at *3 (2019), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1983). We must consider the entire administrative record, but will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence"

and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539, *quoting Steele*, 290 F.3d at 940.

In addition, while the ALJ "is not required to address every piece of evidence," she "must build an accurate and logical bridge from evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must also "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence…and to enable us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (internal quotation omitted).

### B. Analysis under the Social Security Act

In order to qualify for SSI, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ must employ a five-step inquiry, asking: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant has the burden of establishing disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

## C. The ALJ's Opinion

Here, the ALJ applied the five-step inquiry in reaching her decision to again deny Claimant's request for SSI benefits. She first acknowledged the remand order directing her to "assess the weight given to the medical source statements of Dr. Barrios and Dr. Zhang and assess the claimant's arguments." (R. 664.) Then, at step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since May 23, 2011, the application date. (R. 646.) At step two, the ALJ determined that Claimant had the following severe impairments: seizure disorder, learning disorder, attention deficit hyperactivity disorder, mood disorder, bipolar disorder, behavior disorder, and anxiety with an obsessive-compulsive disorder. (R. 646-47.) The ALJ found that Claimant's right knee disorder, left knee disorder, scrotal cellulitis, dizziness, and obesity were non-severe. (*Id.*) Next, at step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the Commissioner's listed impairments. (R. 647-650.)

The ALJ went on to assess Claimant's residual functional capacity ("RFC"), ultimately concluding that Claimant had the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: "he can never climb ladders, ropes, or scaffolding; never operate motor vehicles; and should avoid all exposure to work hazards such as unprotected heights and dangerous moving machinery." (R. 650.) The ALJ further limited Claimant to work involving simple, routine tasks, with no public contact, no more than occasional contact with coworkers and supervisors, and no requirement for "teamwork" to complete tasks. (*Id.*) In the ALJ's opinion, Claimant should have no strict quotas, "but can do work that is measured by what is completed by the end of the workday." (*Id.*) The ALJ also opined that Claimant should have no requirement to handle money, read, or write for work purposes. (*Id.*)

9

At step four, the ALJ determined that Claimant had no past relevant work as defined by the regulations. *See* 20 C.F.R. § 416.965. Lastly, at step five, the ALJ found that Claimant had the RFC to perform work in the national economy, including as a laundry laborer and dryer attendant (both medium and unskilled), and a bagger (light and unskilled). (R. 658-59.) As a result, the ALJ concluded that the Claimant was not disabled as defined by the Act since May 23, 2011. (R. 659.)

In this second appeal, Claimant argues that the ALJ failed to follow the treating physician rule, "resulting in noncompliance of the remand order, and an RFC determination which was unsupported by substantial evidence." (Pl.'s Mem. at 6.) Specifically, Claimant argues that (1) the ALJ again discounted the opinions of treating physicians Dr. Zhang and Dr. Barrios without providing good reasons for doing so; and (2) erred by failing to recontact Dr. Zhang and Dr. Barrios to obtain additional information. We address each argument presented in turn below, ultimately concluding that the ALJ's opinion should be upheld.

### D. The ALJ Gave Good Reasons for Discounting the Opinions of Dr. Barrios and Dr. Zhang.

Claimant first contends that the ALJ erred in weighing the opinions of his treating physicians, Dr. Barrios and Dr. Zhang. Under the treating physician rule applicable to this case, the ALJ must give a treating source's opinion controlling weight "if it is well-supported and not inconsistent with other substantial evidence."[2] *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see also* 20 C.F.R. § 416.927(c). When controlling weight is not given, an ALJ must offer "good reasons" for doing so, after considering the "length, nature, and extent of the

---

[2] For claims filed on or after March 27, 2017, the treating physician rule has been modified to eliminate the controlling weight instruction. *Kaminski v. Berryhill*, 894 F.3d 870, 876 (7th Cir. 2018), amended on reh'g (Aug. 30, 2018). Opinion evidence in such claims is now governed by 20 C.F.R. §§ 404.1520c, 416.920c.

treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); 20 C.F.R § 416.927(c). While "an inadequate evaluation of a treating physician's opinion requires remand," *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017), courts will uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, 358 Fed.Appx. 738, 740 (7th Cir. 2010)). With this standard in mind, we turn to the ALJ's assessment of the treating physicians' opinions.

1. **Dr. Barrios**

On March 19, 2012, Dr. Barrios wrote a letter to the SSA in support of Claimant's original application for SSI. (R. 626-27.) According to Dr. Barrios, Claimant was under his care from August 2008 to April 2011, during which time he was diagnosed with bipolar disorder and ADHD. (R. 626.) Claimant's symptoms included emotional dysregulation, mood lability, impulsivity, anger issues, physical aggression, inattention, anxious worry, and rigidity. (*Id*.) Dr. Barrios described an instance when Claimant almost set a room on fire with a spray can turned into a blow torch and a time when he brought a knife to school. (*Id*.) Dr. Barrios reported that Claimant had learning difficulties in school and required an individualized education plan. (*Id*.) According to Dr. Barrios, Claimant also had difficulty maintaining self-hygiene, conducting household chores, taking public transportation, working, or managing money. (R. 627.)

Dr. Barrios explained that Claimant did not have the ability to process medical information on his own and, despite his medical conditions, attempted to refuse medication when he turned eighteen. (R. 626-27.) Dr. Barrios indicated that he previously asked Claimant's mother to consider a power of attorney process in order to make medical decisions for Claimant.

(R. 627.) For all of these reasons, Dr. Barrios recommended Claimant "for disability status." (*Id*.)

The ALJ decided to give Dr. Barrios' 2012 opinion "little weight." (R. 657.) In doing so, she first opined that Dr. Barrios' recommendation for a power of attorney was related to his failure to get treatment for mononucleosis, "not due to mental (or physical) incapacity." (*Id*.) The ALJ also noted that there were no additional references to Claimant's need for a legal guardian elsewhere in the record. (*Id*.) Next, the ALJ pointed out that the "doctor's letter did not use SSA criteria for disability and did not make any reference to the record for support." (*Id*.) The ALJ further explained that Dr. Barrios' description of limited daily activities conflicted with some of Claimant's own testimony. (*Id*.) Lastly, the ALJ concluded that Dr. Barrios' opinion "is not well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence," including Dr. Barrios' own treatment records reflecting improvement. (*Id*.) According to Claimant, these reasons remain insufficient under the regulations to give Dr. Barrios' opinion little weight. The Court disagrees and finds that it should uphold the ALJ's reasons for discounting Dr. Barrios' opinion under the standards set forth by the Seventh Circuit. *See e.g.*, *Stepp*, 795 F.3d at 718 ("We will uphold all but the most patently erroneous reasons for discounting a treating physician's assessment.").

At the outset, it is worth noting that the ultimate question of disability is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(2) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Thus, the ALJ was not required to blindly accept the opinion of Dr. Barrios (or of Dr. Zhang) that Claimant was disabled. On the other hand, the ALJ cannot simply disregard those opinions without providing sufficient reasons to do so. The ALJ has provided sufficient reasons here.

12

First, the ALJ pointed to specific inconsistencies between Dr. Barrios' opinion, his own treatment notes, and the other evidence of record. For example, Dr. Barrios' descriptions of Claimant's extremely limited daily activities conflicted with Claimant's own testimony at his first hearing, which was held just a year after Dr. Barrios' letter. While Claimant argues that the ALJ improperly conflated his activities of daily living with his ability to work, his argument is misplaced in this regard. Indeed, the Seventh Circuit has criticized ALJs for failing "to consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours a day five consecutive days of the week." *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). It does not follow though that an ALJ cannot rely on inconsistencies between a treating physicians' opinion and the Claimant's own testimony of his activities when determining what weight to give the opinion. On the contrary, it is directly within the ALJ's purview to consider such inconsistences. *See Parrott v. Astrue*, 493 Fed.Appx. 801, 805 (7th Cir. 2012) (determining that the ALJ "reasonably concluded" that a treating physician's opinion "was inconsistent with [claimant's] own account of his abilities.").

More importantly, the ALJ properly pointed out that Dr. Barrios' letter conflicted with his own treatment notes. The ALJ noted that Dr. Barrios' treatment notes "show improvement with medication," including less aggression, frustration, irritability, and anger. (R. 657.) Dr. Barrios also consistently found Claimant to be "alert and oriented with intact thought process and content." (*Id*.) The ALJ reasonably discredited Dr. Barrios' opinion where it was "internally inconsistent." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *see also Richison v. Astrue*, 462 Fed.Appx. 622, 625 (7th Cir. 2012) ("The ALJ did not err here in determining that [the treating physician's] opinion conflicted with other medical evidence, including his own treatment notes.").

13

Furthermore, Dr. Barrios' letter did not include many specific mental functional limitations as are often included in such medical source statements. *See* 20 C.F.R. § 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). Those that Dr. Barrios did include, such as problems with math, handling money, and being in social settings, were accounted for in the ALJ's RFC determination. Taken together, all of these reasons amount to sufficiently "good reasons" under Seventh Circuit standards for discounting the opinion of Dr. Barrios.

### 2. Dr. Zhang

Dr. Zhang submitted two letters in connection with Claimant's disability applications. On September 10, 2012, Dr. Zhang wrote a brief letter listing Claimant's prescriptions and reporting Claimant had been diagnosed with "mood disorder secondary to general medical condition" and "borderline intellectual functioning secondary to temporal lobe epilepsy." (R. 639.) According to Dr. Zhang, Claimant "is unable to work full-time due to the status of his cognitive functioning." (*Id*.) This was the extent of Dr. Zhang's first submission.

The ALJ gave Dr. Zhang's 2012 opinion "no weight," providing similar reasoning as she did for discrediting Dr. Barrios' opinion. (R. 657.) The ALJ again relied on the contemporaneous treatment notes from Dr. Zhang, which revealed improvement with treatment and decreasing symptoms. The ALJ noted that at Claimant's visits with Dr. Zhang, Dr. Zhang documented that Claimant "consistently had an appropriate mood and thought process," "repeatedly said he was feeling fine," and expressed minimal desire to get a job because his

girlfriend was supporting him financially. (R. 657-58.) The ALJ also cited to Claimant's part-time work and daily activities as being inconsistent with Dr. Zhang's opinion. (R. 658.)

On March 2, 2017, Dr. Zhang provided another letter to the SSA at the request of Claimant's attorney. (R. 1309.) Dr. Zhang stated that Claimant "has been diagnosed with pervasive developmental disorder with intellectual disability (IQ 60)," and has a history of temporal lobe epilepsy. (*Id*.) In Dr. Zhang's opinion, Claimant "is not employable secondary to impairment in concentration, memory, decision making and difficulty in impulsivity control." (*Id*.)

The ALJ gave the 2017 opinion "little weight," first noting that Dr. Zhang provided the statement "at the request of claimant's mother acting upon the advice of the claimant's disability attorney which stated what to include in the statement."[3] (R. 658.) The ALJ elaborated further that the opinion remained inconsistent with the overall evidence of record, including Dr. Zhang's own treatment notes. (*Id*.)

In attacking the ALJ's treatment of Dr. Zhang's opinions, Claimant again contends that the ALJ improperly relied on his daily activities. But, as explained above, *supra* at p. 13, in addressing Dr. Zhang's opinions, the ALJ did not impermissibly equate daily activities with the ability to work full time. Instead, the ALJ used daily activities as one of several reasons to discount Dr. Zhang's opinions that Claimant's cognitive functioning precluded full-time employment. As he did with Dr. Barrios' opinion, the ALJ also properly pointed to

---

[3] The Court acknowledges that this reason *alone* might not be sufficient to reject Dr. Zhang's opinion. *See Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998) ( "[T]he mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report."); *accord Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

15

inconsistencies between Dr. Zhang's opinions and his own progress notes - which reflected general improvement in symptoms with continued treatment. As above, the ALJ has provided "good reasons" for discrediting Dr. Zhang's opinions, which can be upheld under Seventh Circuit precedent. *See Skarbek*, 390 F.3d at 503.

### E. The ALJ Was Not Required to Recontact Claimant's Treating Physicians.

Finally, Claimant argues that the ALJ should have recontacted Claimant's treating physicians if she believed their opinions were inadequate and inconsistent with SSA standards. He also argues that the ALJ should have ordered updated IQ testing. The Court disagrees on both counts.

Claimant is correct that the ALJ has a duty to develop a full and fair record. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). But the ALJ's obligation is not limitless and reviewing courts defer to the ALJ's reasoned judgment as to when further inquiry is warranted. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *see also* Skarbek, 390 F.3d at 504 ("An ALJ need recontact medical sources only when the evidence received is inadequate to determine whether the claimant is disabled.") "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Here, Claimant has failed to show how the record before the Court was inadequate with respect to the opinions of Drs. Barrios and Zhang. The record included detailed treatment records from Dr. Barrios and Dr. Zhang, among others, and the ALJ properly relied on those records to discount their opinions. Contrary to Claimant's assertion, the ALJ's description of the opinions as "inadequate" and "inconsistent" does not require her to follow-up for additional information. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) ("An ALJ is entitled to

16

evaluate the evidence and explanations that support a medical source's findings … [a]nd she need not recontact the source every time she undertakes such an evaluation…").

As for the IQ testing, Claimant argues that "there is a likely possibility that [he] is functioning below 70 IQ" because of previous IQ test results. (Pl.'s Mem. at 12.) Thus, Claimant contends that the ALJ should be required to order additional IQ testing to determine if he satisfies Listing 12.05B, which, among other things, requires a full scale IQ of 70 or below.

As the Commissioner points out, the SSA did attempt to obtain IQ testing through a consultative examination with Dr. Glen Wurglitz in late 2011. (R. 493-98.) Dr. Wurglitz administered the Wechsler Adult Intelligence Scale – Fourth Edition, but noted that Claimant "quickly gave up on tasks that became difficult where, with greater effort, he could have been more successful." (R. 496.) As such, Dr. Wurglitz (and in turn the ALJ) did not consider the results, including the full scale IQ score of 66, to be "entirely accurate," and ultimately assessed a learning disability. (R. 497, 658.) The other IQ test in the record dates back to 2005, when Claimant demonstrated a full scale IQ of 72. (R. 1190.) Though Dr. Zhang described Claimant as having an "intellectual disability" and an IQ of 60, there is no indication that Dr. Zhang administered an IQ test. Furthermore, Claimant cites to no records that corroborate that result. On this record, Claimant's argument that he *might* meet at least the IQ requirements of Listing 12.05B (despite at least one valid IQ result to the contrary) is insufficient to require the ALJ to once again order an IQ test.

In sum, where, as here, the "record contained adequate information for the ALJ to render a decision," the ALJ was not required to re-contact the treating physicians. *Britt v. Berryhill,* 889 F.3d 422, 427 (7th Cir. 2018) (citing *Skinner v. Astrue,* 478 F.3d 836, 843-44 (7th Cir. 2007)).

## III. CONCLUSION

For the foregoing reasons, this Court finds that the ALJ's opinion is supported by substantial evidence and free from legal error. Accordingly, Claimant's motion for summary judgment (Dkt. 14) is denied and the Commissioner's motion for summary judgment (Dkt. 22) is granted. It is so ordered.

                                **ENTERED:**

                                *[signature]*

                                **Jeffrey I. Cummings**
                                **United States Magistrate Judge**

**Dated: April 19, 2019**